Present: Hassell, C.J., Lacy, Keenan, Koontz, and Lemons,
JJ., and Carrico and Russell, S.JJ.

LINDA B. PLUNKETT

v. Record No. 050329      OPINION BY JUSTICE DONALD W. LEMONS
                                    January 13, 2006

PETER SAMUEL PLUNKETT, ET AL.

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Michael S. Irvine, Judge

This appeal concerns the proper construction of a marital

agreement and two mutual and reciprocal wills, all of which

were executed simultaneously.

I.  Facts and Proceedings Below

The marital agreement ("Agreement") at issue was executed

by Linda and Carroll H. ("Pete") Plunkett about five years

into their marriage.  The Agreement provided in paragraphs 1

and 2:

> 1.  Testamentary Disposition of Separate
> Estates.  The parties each agree that in
> light of the fact that this was a second
> marriage for each of them, and that Pete has
> children from his previous marriage, that
> their separate property be devised and
> bequeathed to his children.
>      Accordingly, the parties agree that
> they will execute the wills, copies of which
> are attached to this Agreement, and make no
> subsequent changes in testamentary
> disposition of their separate property to
> Pete's children.
>
> 2.  Testamentary Disposition of Marital
> Estate.  The parties agree that they will
> execute the wills, copies of which are
> attached to this Agreement, and make no

1

> subsequent changes . . . in contravention [of] their intent to leave their marital property as set forth and described in this Agreement first to the survivor and then equally to all of Pete's children.

Attached to the Agreement are two wills, one signed by Pete and one signed by Linda.  All three documents were executed simultaneously.[1]

Upon Pete's death, Linda submitted his will to probate. Article IV of the will states in pertinent part:  "I give and bequeath my jewelry, personal effects, automobiles and other tangible personal property, to my spouse, if said spouse survives me; and if not, to my children."  The residuary clause, contained in Article V states:  "My Residuary Estate, I give, devise, and bequeath to my spouse, if [she] survives me. If said spouse shall not survive me, I give, devise, and bequeath said property to my children and their descendants." The will further provided that "[i]f . . .any share of my [r]esiduary [e]state becomes distributable to my son, Peter" such share would be held in a separate trust until Peter reached a certain age or completed college.  There is no other provision in the will regarding disposition of Pete's property.

Upon submission of the will to probate, Pete's three children, appellees herein, alleged that Pete had, "upon

information and belief, significant separate property, including . . . real estate, stocks, and . . . items of personal property" with a value "greater than the federal and state estate tax exemption amount."  They also asserted that the language of the will was inconsistent with his intent, the Agreement, and Pete's "prior relationship with and devotion to his children."  They filed a bill of complaint seeking imposition of a constructive trust on Pete's separate property.  Linda argued to the trial court that the terms of the Agreement are not ambiguous, the will conforms to the Agreement, and conforms to the intent she shared with Pete in executing the Agreement.

After reviewing the Agreement and hearing testimony, the trial court imposed a constructive trust upon Pete's separate property for the benefit of the children.  In its opinion letter, the trial court reasoned that the language of the Agreement and the extrinsic evidence "considered together" are sufficient to support the interpretation offered by Pete's children.[2]  Linda appealed to this Court, and assigns error to

---

[1] A fourth document, a deed, was also executed the same day.  The deed was neither referred to nor incorporated in any manner into the Agreement, so it will not be discussed here.
[2] The trial court's opinion letter does not expressly state that the Agreement is ambiguous or that resort to extrinsic evidence was necessary.  Nonetheless, the fact that such evidence was considered and was apparently deemed

the trial court's admission of extrinsic evidence and the imposition of the constructive trust.

## II.  Analysis

### A.  Standard of review

The construction of a marital agreement is subject to the rules of contract construction generally.  Southerland v. Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995) (applying general contract rules of construction to property settlement agreements).  Marital agreements written "for the purpose of settling the rights and obligations of either or both [spouses]" have the same effect and are subject to the same conditions as premarital agreements.  Code § 20-155.  The parties may contract with respect to "the making of a will."  Code § 20-150(3)-(5).

On appeal, the Court reviews a trial court's interpretation of a contract de novo.  Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002) (citing Wilson v. Holyfield, 227 Va. 184, 313 S.E.2d 396 (1984)) ("we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself").  The question whether contract language is ambiguous is one of law, not fact.  Tuomala v. Regent

necessary to the trial court's judgment implicitly indicates that such a finding occurred.

4

University, 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996). Thus, the trial court's conclusion regarding ambiguity is accorded no deference on appeal.  See id.

### B.  Analytical framework

At the outset, the proper analytical framework for this case must be clarified.  Pete's children urge this Court to find that Pete's will violates the terms of the Agreement. They cite certain prior decisions dealing with a similar question as guidance for resolution of this case.  See, e.g., Black v. Edwards, 248 Va. 90, 445 S.E.2d 107 (1994); Williams v. Williams, 123 Va. 643, 96 S.E. 749 (1918).  These cases stand for the general proposition that an agreement to make mutual and reciprocal wills, where properly proven, will be enforced against a breach of the agreement by a subsequent non-conforming will.

We do not find it necessary or proper to consider these decisions because, as a matter of law, this will cannot "breach" this Agreement.  It is axiomatic that a party cannot breach a contract in the formation of the contract itself. Accordingly, this case does not raise the question of a breach of contract.  This particular Agreement incorporates the wills by reference, and we must consider all of the terms of this Agreement, including the terms contained in the incorporated wills together.

5

We must utilize general rules governing contract construction in the interpretation of the integrated Agreement.

> Contracts are construed as written, without adding terms that were not included by the parties. Wilson, 227 Va. at 187, 313 S.E.2d at 398. Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Bridgestone/Firestone v. Prince William Square Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995); Ross v. Craw, 231 Va. 206, 212, 343 S.E.2d 312, 316 (1986). A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used. [Ross, 231 Va.] at 212-13, 343 S.E.2d at 316. Furthermore, contracts must be considered as a whole "without giving emphasis to isolated terms." American Spirit Ins. Co. v. Owens, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001).

TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002).

Paragraphs 1 and 2 of the Agreement set forth seemingly distinct treatment of the "separate" and "marital" property. "When two provisions of a contract seemingly conflict, if, without discarding either, they can be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole, this should be done." Ames v. American Nat'l Bank of Portsmouth, 163 Va. 1, 39, 176 S.E. 204, 217 (1934) (citing Phoenix Ins. Co. v. Shulman Co., 125 Va. 281, 291, 99 S.E. 602, 605 (1919)). Accord Hutchison v. King, 206 Va. 619, 624-25, 145 S.E.2d 216, 220 (1965).

6

Upon de novo review of the Agreement including the wills at issue, we hold that the provisions may be harmonized "without discarding any of its provisions or doing violence to any of its language." Ames, 163 Va. at 39-40, 176 S.E. at 217. First, we note that the Agreement incorporates Linda's will, which contains provisions reciprocal to those found in Pete's will. Articles IV and V of Linda's will, read together, leave her entire estate to Pete, and then to his children if he does not survive her. The practical effect is that all assets in Linda's estate will pass to Pete's children upon her death. She is not free to make changes to this will, as paragraphs 1 and 2 of the Agreement require that there be "no subsequent changes" to the testamentary disposition. As a result, any children who survive Linda will receive an equal share of the entire estate upon Linda's death.

We also note that paragraph 1, which appears to be the real center of this controversy, refers to "their separate property" rather than "his" or "her" separate property. Such language is not frequently used when referring to separate property, and we think it is significant that the separate property is referred to in plural rather than singular form. The use of the plural form demonstrates the intent of both parties that the separate property of each spouse will be joined together and then devised to the children. This can

7

only occur upon the deaths of both spouses, rather than each spouse. Clearly, paragraph 1 does not mean that the separate property of both Linda and Pete will be devised to the children upon his death. Alternatively, if the language is supposed to mean "each" set of separate property owned by each spouse, and Linda had predeceased Pete, it would be most unusual for Linda to devise only her separate property to Pete's children while devising all other property to Pete first, which would be the result reached if we were to adhere to the trial court's interpretation of this language.

A far more reasonable interpretation is that the spouses intended this language to reflect what was actually provided in the wills. On this point, we reject the contention that paragraph 1 must necessarily mean that Pete's separate property would be devised to the children upon Pete's death. The language of paragraph 1 does not refer specifically to "his" separate property, nor to "his" death, and we are not permitted to add language to that which already exists on the face of the Agreement. Wilson, 227 Va. at 187, 313 S.E.2d at 398. The language used, "their separate property," therefore leads to the conclusion that it must have referred to some combination of the separate property owned by Linda and Pete.

Most significantly, we cannot ignore the language requiring the simultaneous execution of the wills and the

8

circumstances under which this was accomplished. The Agreement states specifically "that they will execute the wills, copies of which are attached to this Agreement." This language required the spouses to read and execute these particular wills in conjunction with the Agreement. The wills employed specific language regarding the identification of Pete's three children, appointment of the named Executor, disposition of property, appointment of a guardian for Peter during his minority, and the trust to be established for Peter. Surely if the spouses intended an estate plan that split the marital and separate property apart, then the failure to include this language in these particular wills would have been readily apparent. The simultaneous execution of all these documents demonstrates that the Agreement and the incorporated wills accomplish precisely what the spouses intended. Cf. Shevel's Inc. v. Southeastern Assocs., Inc., 228 Va. 175, 183, 320 S.E.2d 339, 344 (1984) ("The burden on a party seeking to impeach an instrument he has approved by his signature is a heavy one") (citing Gibbs v. Price, 207 Va. 448, 450, 150 S.E.2d 551, 552 (1966)).

Upon these considerations, we conclude that Linda and Pete intended to leave their property first to the surviving spouse, and then to Pete's children. The terms of this Agreement and the wills incorporated therein are not ambiguous

9

and can be harmonized in a reasonable manner.  There is no need to resort to extrinsic evidence to resolve the questions raised here.

### III.  Conclusion

We hold that the trial court erred in considering extrinsic evidence pertaining to the Agreement, and erred in imposing a constructive trust in favor of Pete's children.  We will reverse the judgment of the trial court and enter final judgment in favor of Linda.

<u>Reversed and final judgment</u>.