COURT OF APPEALS OF VIRGINIA


Present: Judges McClanahan, Petty and Powell
Argued at Richmond, Virginia


ALFRED J. LALUNA

                                     MEMORANDUM OPINION[*] BY

v.       Record No. 2267-08-2          JUDGE ELIZABETH A. McCLANAHAN
                                          MAY 26, 2009

RENEE M. BIRCHELL, F/K/A
   RENEE M. LALUNA


FROM THE CIRCUIT COURT OF ORANGE COUNTY
William H. Ledbetter, Jr., Judge

J. Randolph Parker (Parker, McElwain & Jacobs, P.C., on briefs), for
appellant.

William C. Scott, IV (Michie Hamlett Lowry Rasmussen & Tweel,
on brief), for appellee.


Alfred J. LaLuna (husband) appeals from a final judgment of the trial court declaring the

rights and obligations of husband and Renee M. Birchell (wife) under spousal support provisions

contained in their marital separation agreement. We affirm, in part, and reverse, in part, the

judgment of the trial court.

## I. BACKGROUND

Husband and wife entered into a marital separation agreement (the agreement) on January 9,

2003, which was incorporated into the parties' divorce decree. The agreement, in pertinent part,

states:

> 4. Salary in Lieu of Spousal Support
>
>      The parties agree that Wife shall receive the sum of
> $70,000 annually as her salary for employment with Tri County

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Development Corporation, payable in equal weekly installments, beginning on the first regular pay day of the corporation after the execution of this agreement. This payment shall continue for ten (10) years so long as the corporation or successor entity remains in the active business of home building and land development and so long as the Wife is employed by Tri County Development Corporation.

In the event that Tri County Development Corporation fails or becomes insolvent during the time Wife is entitled to receive a salary from Tri County as set forth herein, thereby eliminating Husband's ability to be employed by this corporation, Wife shall receive as spousal support a sum equal to twenty percent (20%) of Husband's W-2s and K-1s, payable in equal monthly installments commencing upon the date of the failure or insolvency of this corporation and ending ten (10) years from the date of the execution of this agreement.

Tri-County Development Corporation (the corporation) was terminated, effective April 30, 2006. Thereafter, husband began making monthly spousal support payments in the amount of $7,336 based on his 2005 W-2s and K-1s.[1] He calculated the amount of his monthly payment by taking the net sum[2] of his 2005 W-2s and K-1s, multiplying the net sum by twenty percent (20%), and dividing that amount by twelve months. In March 2007, husband adjusted his payments to wife based on his 2006 W-2s and K-1s, which reduced his monthly payment to $2,183.67. Wife objected to the adjustment and filed a motion for declaratory judgment seeking a ruling from the trial court as to the rights and obligations of the parties under paragraph 4 of the agreement.

---

[1] Both parties agree "W-2s" refer to all of husband's forms W-2 (tax documents used to report wage earnings and tax withholding) and "K-1s" refer to all of husband's schedules K-1 (tax documents used to report income from partnerships, S corporations, and certain trusts).

[2] Husband subtracted losses reported on his K-1s to reach the sum of his W-2s and K-1s. Wife argued in the trial court that losses should not be considered but the trial court ruled against her finding that losses should be taken into account and thus subtracted from the income figures reported on the K-1s. Wife did not appeal that ruling.

Wife contended husband was required to continue the monthly payments to wife based on his 2005 W-2s and K-1s for the remainder of the term of the agreement.[3] Husband argued the amount of his monthly payment should not be "annualized" but calculated by taking twenty percent (20%) of the net sum of his W-2s and K-1s and dividing that figure by the number of months remaining in the agreement.[4] Husband argued, in the alternative, if the monthly payment should be calculated on an annual basis, that calculation should be adjusted each year based on his most current W-2s and K-1s rather than based on his 2005 W-2s and K-1s for the remainder of the term of the agreement. The trial court ruled in wife's favor holding, pursuant to paragraph 4 of the agreement, the monthly support payment should be calculated on an annual basis using husband's 2005 W-2s and K-1s for the remainder of the term of the agreement.

## II. ANALYSIS

Marital agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally. Southerland v. Estate of Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995). "The trial court's interpretation of the [agreement] is an issue of law that we review *de novo*." Stacy v. Stacy, 53 Va. App. 38, 43, 669 S.E.2d 348, 350 (2008) (*en*

---

[3] When the corporation terminated, there were 80 months and nine days remaining in the ten-year term of the agreement.

[4] Husband in fact paid wife by taking twenty percent (20%) of the net sum of his W-2s and K-1s and dividing that figure by twelve. Although his prior conduct is consistent with wife's position regarding an annual calculation of the support payment, husband argues his payments were merely a "proposal for the calculation of spousal support." Because we find the agreement unambiguous, we have not considered the parties' course of conduct. See Smith v. Smith, 43 Va. App. 279, 287, 597 S.E.2d 250, 254 (2004) ("[I]f no patent or latent ambiguities exist, a court should enforce the plain meaning of the contractual language without resort to extrinsic evidence.").

*banc*).[5]  "Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning."  Plunkett v. Plunkett, 271 Va. 162, 167, 624 S.E.2d 39, 42 (2006) (citations and internal quotation marks omitted).  "[C]ontract language is ambiguous when 'it may be understood in more than one way or when it refers to two or more things at the same time.'"  Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 632, 561 S.E.2d 663, 668 (2002) (quoting Granite State Ins. Co. v. Bottoms, 243 Va. 228, 234, 415 S.E.2d 131, 134 (1992)).  "A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used."  Plunkett, 271 Va. at 167, 624 S.E.2d at 42 (citations and internal quotation marks omitted).

Both parties contend the agreement is unambiguous but disagree as to the meaning of what the parties intended in paragraph 4 of the agreement.  "'The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.'"  Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984) (quoting Meade v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984)).  We agree paragraph 4 of the agreement is unambiguous and find the parties intended the monthly spousal support payment to wife be calculated on an annual basis. This intention is made clear by the language of the agreement creating spousal support payments in place of wife's annual salary from the corporation and having as their basis husband's income as reflected on his W-2s and K-1s, tax forms that are generated annually.  We also find the parties intended that the monthly spousal support payments be based on husband's annual W-2s and K-1s, such that his payment is calculated using his most recent W-2s and K-1s, not his 2005 W-2s and

---

[5] "Absent the necessity to consider extrinsic evidence, appellate courts review trial court interpretations of contractual texts *de novo* because we have an equal opportunity to consider the words within the four corners of the disputed provision."  Vilseck v. Vilseck, 45 Va. App. 581, 588 n.3, 612 S.E.2d 746, 749 n.3 (2005) (citations and internal quotation marks omitted).

K-1s for the remainder of the term of the agreement.[6] This intention is made apparent by the parties' use of tax documents that are generated on an annual basis and the language of the agreement tying the spousal support payments to husband's income and, therefore, his ability to pay.[7]

Accordingly, pursuant to paragraph 4 of the agreement, when the corporation terminated, wife became entitled to receive, on an annual basis, an amount equal to twenty percent (20%) of husband's net income as reflected on his W-2s and K-1s in existence at the time the annual payment is calculated. This calculation was properly made in 2006, based on husband's 2005 W-2s and K-1s, and shall, on every subsequent year, be made upon husband's receipt of his W-2s and K-1s for the prior tax year.[8] Pursuant to the agreement, the annual spousal support is payable in equal monthly installments and thus divided by twelve to calculate the monthly payment. In making this ruling, we find this is not only the clear intention of the parties as reflected in the language of the

---

[6] Our interpretation of the agreement in this regard does not render the support payment "modifiable" as wife contends. Courts do not have authority to modify the provisions for spousal support, outside the terms of the agreement, Pendleton v. Pendleton, 22 Va. App. 503, 506-07, 471 S.E.2d 783, 784 (1996), and our interpretation neither permits a modification of the terms of the spousal support provision nor allows a modification of the support payments but directs the payment of the support obligation according to the terms of the agreement to which both parties agreed.

[7] Wife argues the 2005 W-2s and K-1s must continue to be used for the remainder of the agreement so that she will receive a monthly payment "equal to or greater than the monthly amount of her salary" from the corporation. But had the parties intended that wife receive an amount equal to or greater than her salary from the corporation, the parties could have provided for a specified or minimum spousal support payment. Instead, they clearly tied the amount of wife's payment to husband's ability to pay.

[8] Although W-2s are generally issued by January 31st and K-1s are generally issued by March 15th, since there is no way to know when husband will receive his W-2s and K-1s for the prior tax year, we have not provided a specific date on which the annual payment shall be calculated. Rather, we direct the payment be calculated upon husband's receipt of all of his W-2s and K-1s.

agreement, but is the only reasonable interpretation of the agreement, see Vilseck, 45 Va. App. at 588, 612 S.E.2d at 749-50.[9]

For these reasons, we affirm the trial court's judgment finding the spousal support payments should be calculated on an annual basis but reverse the trial court's judgment that the spousal support payments should be based on husband's 2005 W-2s and K-1s for the remaining term of the agreement.

Affirmed, in part, and
reversed, in part.

---

[9] Because we reject wife's argument that the 2005 W-2s and K-1s are to be used for the remainder of the agreement, we need not consider husband's argument that the 2006 W-2s and K-1s should instead be used for the remainder of the agreement.