COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Beales and Decker
Argued at Alexandria, Virginia

EVANGELIA GONZALES

                                                  MEMORANDUM OPINION* BY
v.      Record No. 0911-17-4                      JUDGE RANDOLPH A. BEALES
                                                  JANUARY 16, 2018
RAFAEL A. GONZALES


           FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                         Craig D. Johnston, Judge

           Mariam Ebrahimi for appellant.

           Maureen A. Kersey for appellee.


        Evangelia Gonzales ("wife") appeals the Circuit Court of Prince William County's

interpretation of Paragraph 28 of the parties' property settlement agreement (the "Agreement" or

"PSA").[1]  The trial court interpreted that paragraph as entitling wife to one-half of the marital

share of the United States Secret Service ("Secret Service") pension for Rafael Gonzales

("husband") after his spousal support obligation concluded.  However, the trial court ruled that

Paragraph 28 did not entitle wife to a retroactive lump sum of the pension income that husband

received between January 4, 2007 and September 1, 2016.  Wife timely appealed, contending

that the "trial court erred in its interpretation of Paragraph 28 of the Agreement, denying [sic] to

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The Court recognizes that the parties have been divorced for more than ten years.
However, because the Agreement in question refers to the parties as "husband" and "wife," we
have used these same descriptions in referring to the parties for the sake of consistency and
clarity.

award [wife] the one-half of the marital share of [husband's] secret service pension calculated as of the date of execution of the parties' Agreement . . . ."

## I. BACKGROUND

During the marriage, husband was employed with the Secret Service, and he earned a pension from this employment. At the time of the parties' separation on August 31, 2004, husband was newly retired from the Secret Service and receiving income from the Secret Service pension. On January 4, 2007, the parties entered into the Agreement, which was subsequently "affirmed, ratified and incorporated but not merged" into the August 23, 2007 final decree of divorce, pursuant to Code § 20-109.1.

Under the terms of the Agreement, husband made monthly spousal support payments for a period of ten years that began on October 1, 2006 and concluded on September 1, 2016. After husband's spousal support obligation concluded, wife filed a motion to reinstate the case in the trial court. On October 17, 2016, she filed a motion for declaratory judgment asking the trial court to declare that "Paragraph 28 of the parties' Agreement entitles Ms. Gonzales to her full one-half of the marital share of the Plaintiff's [husband's] Secret Service pension, including for the time period for the last ten years, for which her entitlement to receive the retirement was put on hold." Wife also asked that the trial court order "Plaintiff to pay the lump sum of the last ten years."

At issue in this matter is the trial court's interpretation of three sentences of the Agreement's Paragraph 28, entitled "Pension, Retirement Plans and Other Investments." The disputed portion of Paragraph 28 states:

> Wife shall be entitled to receive one-half portion of any sums or benefits, whether matured or un-matured, accrued or un-accrued, vested or otherwise, together with all increases thereof, related to husband's retirement plans, pension plans, 401 K or otherwise, arising from husband's employment from April 26, 1995 (date of marriage) until August 31, 2004 (date of separation). Payment of

- 2 -

any retirement benefits herein awarded would not be due to wife until cessation of spousal support and maintenance as provided hereinabove in Paragraph 24.[2]

. . . Husband agrees to take all steps reasonably necessary to maintain and to protect wife's interests in his pension plans, retirement plans, 401 K or otherwise.[3]

---

[2] Paragraph 24 of the Agreement is entitled "Spousal Support and Maintenance Payments." It states:

> Husband shall pay to wife as and for spousal support and her maintenance the sum of four thousand dollars ($4,000.00) per month beginning October 1, 2006 and continuing thereafter uninterrupted every month on the first of each and every month for a total period of ten (10) years, for the total sum of four hundred eighty thousand dollars ($480,000.00). Husband agrees that he shall not seek a downward modification or termination of his obligation to pay spousal support and maintenance to wife except as provided herein. Husband shall treat spousal support payments as an income tax deduction, and wife shall claim spousal support payments as reportable gross income for tax purposes.

> Husband acknowledges and promises that he shall pay spousal support and maintenance to wife for ten (10) full years at $4,000.00 per month, regardless of any change in husband's or wife's circumstances, except, only, in case of wife's remarriage, either parties' death or wife's habitual cohabitation with another person in a relationship analogous to a marriage for one year or more, as defined by applicable law. Other than the foregoing exceptions, husband's obligations herein are not modifiable by a court of law. By way of demonstration and not limitation, husband's obligation to pay spousal support shall not terminate nor be modified in case of husband's disability, change of income, job loss, retirement, re-marriage or other change in either party's circumstances.

[3] On March 24, 2017, prior to the trial court's hearing on the motion for declaratory judgment, the parties filed an addendum to the Agreement that excluded certain retirement accounts – not including husband's Secret Service pension – from the scope of Paragraph 28. By court order, that addendum was subsequently incorporated, but not merged, into the original January 4, 2007 Agreement. We need not address the details of this addendum because the parties do not dispute its provisions.

On April 18, 2017, the trial court heard the parties' arguments on wife's motion for declaratory judgment. On May 5, 2017, the trial court denied wife's motion. The trial court found that "there does not exist any ambiguity in the parties' Property Settlement and Support Agreement" – and that "the overall purpose of Paragraph 28 of the Agreement and its most reasonable reading is that the Defendant/Counter-Plaintiff [wife] shall receive her ex-spouse's retirement benefits after spousal support ends." The trial court also found "it is not reasonable to make payments for the Plaintiff/Counter-Defendant's [husband's] secret service pension retroactive to the date of execution of the Agreement." This appeal followed.

## II. ANALYSIS

Appellate courts review a trial court's interpretation of a contract *de novo*. Plunkett v. Plunkett, 271 Va. 162, 166, 624 S.E.2d 39, 41 (2006). "Property settlement agreements entered into pursuant to a divorce proceeding are contracts; 'therefore, we must apply the same rules of interpretation applicable to contracts generally.'" Smith v. Smith, 15 Va. App. 371, 374, 423 S.E.2d 851, 853 (1992) (quoting Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)).

These rules of contract interpretation are well-settled.

> Contracts are construed as written, without adding terms that were not included by the parties. Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used. Furthermore, contracts must be considered as a whole without giving emphasis to isolated terms.

Plunkett, 271 Va. at 167-68, 624 S.E.2d at 42 (internal citations and quotations omitted) (quoting TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002)). Also, "we are not to treat any word or clause in the PSA as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words

- 4 -

needlessly." Stacy v. Stacy, 53 Va. App. 38, 48, 669 S.E.2d 348, 352-53 (2008) (*en banc*) (internal citations and quotations omitted).

The parties conceded in the trial court and on appeal that the Agreement's language is clear and unambiguous, and therefore, its meaning should be construed from the four corners of the document. See Brooks v. Bankson, 248 Va. 197, 204, 445 S.E.2d 473, 476-77 (1994) ("The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." (quoting W.F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc., 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962))). While this Court is not bound by the parties' or the trial court's interpretations of the Agreement, we concur that its language is clear and unambiguous. Therefore, we must interpret the Agreement's plain language in the context of the four corners of the entire document. See Eure v. Norfolk Shipbldg. & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002) ("[O]n appeal we are not bound by the trial court's interpretation of the contract provision at issue; rather, we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself." (citing Wilson v. Holyfield, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984))).

We begin with the plain meaning of the three disputed sentences of Paragraph 28. The first disputed sentence of Paragraph 28 states:

> Wife shall be entitled to receive one-half portion of any sums or benefits, whether matured or un-matured, accrued or un-accrued, vested or otherwise, together with all increases thereof, related to husband's retirement plans, pension plans, 401 K or otherwise, arising from husband's employment from April 26, 1995 (date of marriage) until August 31, 2004 (date of separation).

This sentence serves two functions. First, it establishes in very broad terms wife's right to receive one-half portion of the marital share of husband's Secret Service pension. Second, it explicitly defines the marital share based upon the dates provided. The second disputed sentence

of Paragraph 28 modifies the first sentence, and it states, "Payment of any retirement benefits herein awarded," i.e., what was awarded in the previous sentence, "would not be due to wife until cessation of spousal support and maintenance as provided hereinabove in Paragraph 24." Thus, the second sentence places an explicit limitation as to *when* wife receives the award given in the first sentence. Specifically, wife's right to receive one-half of the marital share of the Secret Service pension becomes due only at the cessation of spousal support. In noting what this sentence's plain language does, we also recognize that which it does not do; it does not state whether wife's award is due to her retroactively (i.e., from pension payments that husband had received while he was paying wife spousal support) – or whether she simply receives it prospectively. The third disputed sentence of Paragraph 28 states, "Husband agrees to take all steps reasonably necessary to maintain and to protect wife's interests in his pension plans, retirement plans, 401 K or otherwise." Similar language is often used in property settlement agreements to prevent a party from taking action that could endanger the other party's right to receive his or her portion of a pension or a 401 K deferred compensation plan, and we interpret the last sentence of Paragraph 28 as doing just that.

Therefore, while the first disputed sentence uses broad terms to establish wife's right to one-half of the marital share of the Secret Service pension, it is unclear from Paragraph 28's plain meaning whether that right applies retroactively or whether the parties intended solely for it to apply prospectively upon the cessation of spousal support. Consequently, we must look to other parts of the Agreement to determine the parties' intentions in Paragraph 28. See Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983) ("The contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties. However inartfully it may have been drawn, the court cannot make a new contract for the parties, but must construe its language as written.").

On brief, wife disagrees with the trial court's interpretation that she is not entitled to retroactive payments of her portion of the Secret Service pension. Wife argues that the following language in the first disputed sentence is broad and unlimited, "Wife shall be entitled to receive one-half portion of any sums or benefits, whether matured or un-matured, accrued or un-accrued, vested or otherwise . . . ." Based upon this broad language, wife argues that she is entitled to one-half of the marital share of husband's Secret Service pension as of January 4, 2007 (the date that the parties entered the Agreement). Wife argues that the second sentence does not limit the *amount* of her half portion of the marital share of husband's pension (which she claims began accruing on January 4, 2007); rather, she argues that the second sentence merely states *when* she can claim this amount. Finally, the last disputed sentence requires husband to "take all steps reasonably necessary to maintain and to protect wife's interests . . . ." Wife argues that this language implies the existence of her retroactive share of husband's pension – and that this is her interest that husband was required to protect.

In support of her interpretation of the Agreement, wife argues that the language of Paragraph 28 is clear and unambiguous. Therefore, she claims that the trial court did not need to look to the rest of the Agreement to interpret Paragraph 28's meaning. Thus, wife argues that Paragraph 28 should be read in isolation, and the trial court erred by looking to the rest of the Agreement to interpret it.

This argument is unpersuasive for two reasons. First, it is contrary to the settled principle of contract interpretation that requires this Court to interpret an agreement in its entirety. "In reviewing the agreement, we must gather the intent of the parties and the meaning of the language, if we can, *from an examination of the entire instrument*, giving full effect to the words the parties actually used." Smith, 15 Va. App. at 374, 423 S.E.2d at 853 (emphasis added) (quoting Layne v. Henderson, 232 Va. 332, 337-38, 351 S.E.2d 18, 22 (1986)). Second, wife's

argument that Paragraph 28 should be read in isolation contradicts the plain language of Paragraph 28, which explicitly references Paragraph 24. Paragraph 28 states, "Payment of any retirement benefits herein awarded would not be due to wife until cessation of spousal support and maintenance as provided hereinabove in Paragraph 24." Therefore, based upon a settled principle of contract law and also based upon Paragraph 28's plain language – to which the parties agreed – we must examine other portions of the Agreement to interpret Paragraph 28.

Paragraph 24 describes husband's payment of spousal support to wife. From Paragraph 24's plain language, it is clear that the parties drafted the Agreement with careful detail so as to protect their respective interests. For example, the details contained in Paragraph 24 include the date that spousal support began, the length of time spousal support would be paid, the day of each month when spousal support was due, the amount of each monthly payment, and the total amount of spousal support paid over the ten-year support period. Paragraph 24 also details how the parties would claim spousal support on their income taxes; husband would claim it as a deduction and wife would claim it as income. Finally, Paragraph 24 lists the very limited circumstances that would cause an early termination of husband's spousal support obligation.

Reading Paragraphs 24 and 28 together, as Paragraph 28 requires, it is apparent that Paragraph 28 lacks a commensurate level of detail – when compared to the Agreement's other paragraphs – if its purpose is to require reserving or escrowing pension payments from January 4, 2007 until September 1, 2016, and then require the payment to wife of those funds that have been presumably reserved by husband (and not spent by him over those nearly ten years). On the contrary, other paragraphs that require payments by husband to wife (or to wife's daughters) have those requirements spelled out in considerable detail.[4] This lack of detail directly

---

[4] For example, Paragraph 30 states the exact amount of property to be retained by wife ("Wife shall have as her sole and separate property the balance of the $30,000.00 insurance claim from the parties' last move without any claim whatsoever by husband."). Paragraph 27

contradicts wife's claim that the parties intended for her to receive a lump sum of husband's pension dating back to January 4, 2007. For example, Paragraph 28 contains no detail regarding how that amount of the pension would be paid – i.e., (1) as a lump sum, (2) over a defined payment plan, or (3) in monthly installments (a) in conjunction with the regular payments; or (b) separately from the regular payments. If this large portion of the pension was to be paid to wife over a period of time, then the Agreement fails to state the number of payments or the amounts of these payments. Also, if what was actually wife's share of the pension was paid to husband for nearly ten years, and if he presumably paid income taxes on it, there is no detail regarding whether the parties would need to amend their respective income tax returns – or whether husband would pay wife the portion of the pension less any federal and state income taxes he has already paid on wife's portion. Finally, there is simply no detail at all even regarding whether the amount arguably owed to wife included accrued interest for ten years and at what interest rate.

At oral argument, the Court asked wife's counsel about the lack of detail in Paragraph 28 regarding how husband would maintain wife's claimed portion of the Secret Service pension until the time of payment of it to her. Wife's counsel indicated that the parties intended to leave these details to husband's discretion.[5] If doing so were actually the case, it would be an obvious

---

describes husband's health insurance obligations to wife and her daughters and his life insurance obligation to wife. Paragraph 25 requires husband to continue to pay the college tuition of wife's daughters who were then attending William and Mary. Specifically, Paragraph 25 even goes so far as to detail the minimum grade point average that the daughters must maintain to continue receiving husband's assistance in paying their tuition.

[5] In another provision of the Agreement where the parties could not provide the details of every possible contingency, the Agreement specifically states that "the parties shall cooperate with one another" in order to effect the purpose of the provision. There is no similar language in Paragraph 28 about the parties cooperating to decide these important details about the payment of the Secret Service pension. On the contrary, in Paragraph 22 of the Agreement, which deals with the parties' marital home, it is apparent that the parties intended to retain some flexibility and discretion as to whether wife would keep the home. The relevant portion of Paragraph 22

departure from the parties' intent elsewhere in the Agreement. By looking at the entirety of the Agreement, as we must, it is apparent that the parties intended to draft the Agreement with precise detail to protect their respective interests – without leaving important details to the other party's discretion. Reading the Agreement as a whole, if the parties had intended for wife to receive a significant lump sum (or escrowed installment payments) of husband's pension that had accrued all the while over the ten years that he was paying her spousal support, the parties would have drafted Paragraph 28 in significantly greater detail to protect their interests in relation to this asset. The lack of detail in the language of Paragraph 28 (in contrast to the detail in the rest of the Agreement) indicates to this Court that the parties did not intend for wife to receive a retroactive portion of husband's Secret Service pension, as she claims. Furthermore, we do not find that any other provision of the Agreement lacks the most basic details to guide the parties in their execution of it – or to answer the question of whether a right to have or receive something even exists. Even assuming arguendo that wife is entitled to the retroactive lump sum that she claims (which we do not find), the Agreement simply lacks the most basic details by which a court could order husband to comply with the payment of it. Therefore, to find as wife suggests, this Court would essentially need to write in the terms of the Agreement related to retroactive payment of the Secret Service pension to wife. As stated above, we cannot read in a requirement that the parties did not include, nor can we add or write in the terms that would create it. Therefore, upon *de novo* review, we hold that the trial court ruled correctly.

---

states, "If within the next seven (7) years as husband's obligations herein continue, wife decides that she no longer desires to reside in the residence, *the parties shall cooperate with one another* to list and sell the residence." (Emphasis added). Thus, the discretion retained by the parties is balanced against the explicit requirement that the parties shall cooperate with one another in fulfilling Paragraph 22's requirements. In contrast, Paragraph 28 does not contain similar language, which is indicative that the parties did not intend to leave key provisions of its execution largely to the parties' discretion.

III.  CONCLUSION

In summary, it is clear from the Agreement's language, properly examined in the context of the entire Agreement, that the Agreement required the payment of spousal support for ten years – to be followed by monthly payments to wife of one-half of the marital portion of husband's Secret Service pension.  In short, wife was entitled to one-half of the marital share of husband's Secret Service pension payments once the spousal support payments had ceased.  This conclusion is supported by examining Paragraph 28's language in light of the Agreement's other provisions, including Paragraph 24, to which Paragraph 28 refers.  These various other provisions of the Agreement show that the parties used significant detail when creating other required payments by husband, such as husband's payment of spousal support to wife or husband's payment of the college tuition of wife's daughters.  In contrast, Paragraph 28 lacks any comparable level of detail from which we could reasonably conclude that wife is owed a retroactive lump sum (or a series of payments) of some amount of husband's Secret Service pension from the ten years during which he was already paying spousal support.  Therefore, for all these reasons, we affirm the trial court's interpretation of Paragraph 28 of the parties' Agreement.

Husband requests the payment of his attorney's fees and costs incurred in defense of this appeal.  The parties' PSA governs whether attorney's fees and costs that are incurred in defending that Agreement are assessed against the other party.[6]  Because husband is successful

---

[6] Paragraph 12 of the Agreement states:

> The parties agree that if one party incurs any expenses in the enforcement of any of the provisions of this Agreement, the other will be responsible for all reasonable court costs and attorney's fees and other expenses incurred in such enforcement as may be determined by a court of competent jurisdiction. *Any such costs, fees and expenses incurred by a party in the successful defense of any action for enforcement of any of the agreements, provisions or*

on appeal in defending wife's assignment of error related to the circuit court's ruling, Paragraph 12 of the PSA clearly directs that all his reasonable court costs and attorney's fees related to this appeal shall be paid by wife. We make that award to him and remand to the circuit court for a hearing to determine the amount of reasonable attorney's fees and court costs incurred by husband on appeal. See Sanford v. Sanford, 19 Va. App. 241, 249-50, 450 S.E.2d 185, 190 (1994) (ordering a party to pay his former spouse's attorney's fees related to an appeal in which the former spouse prevailed, as provided in the parties' separation agreement).

Affirmed and remanded.

---

*covenants of this Agreement shall be borne by the party seeking to enforce compliance.* These costs, fees and expenses shall include, but not be limited to, actual attorney's fees, court reporter fees, filing fees, service of process fees, any other fees, costs or expenses reasonably related to such litigation . . . .

(Emphasis added).