COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Huff, Judges Petty and Chafin
Argued at Norfolk, Virginia

MICHAEL B. EBERHARDT

v.      Record No. 0662-18-1

KIMBERLY A. EBERHARDT

MEMORANDUM OPINION[*] BY
JUDGE TERESA M. CHAFIN
DECEMBER 11, 2018

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge[1]

Meghan M. Casey (Brandon H. Zeigler; Parks Zeigler, PLLC, on
briefs), for appellant.

Emily K. Miller (Julia E. Keller; Keller Law Group, on brief), for
appellee.

On March 23, 2018, the Circuit Court of the City of Virginia Beach entered a final decree

of divorce dissolving the marriage of Michael B. Eberhardt ("the husband") and Kimberly A.

Eberhardt ("the wife") and dividing their marital property. On appeal, the husband maintains

that the circuit court erred by distributing certain property in a manner that contradicted the terms

of an agreement between the parties. Specifically, the husband contends that the circuit court

erred by (1) dividing a Fidelity Roth IRA with an account number ending in 7600 between the

parties, and (2) awarding the wife half of the value of two escrow refund checks issued following

the sale of marital property. The husband also argues that the circuit court erred by refusing to

award him a $20,000 credit based on a payment that he made for the wife's attorney's fees

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although a different judge entered the final decree of divorce in this case, Judge Lewis
presided over the December 21, 2017 hearing and made the decisions at issue on appeal.

before the parties entered into their agreement.  For the following reasons, we affirm the circuit court's decision in part, reverse the circuit court's decision in part, and remand this case for the entry of an order consistent with this opinion.

## I.  BACKGROUND

"When reviewing a [circuit] court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  Most of the relevant facts in this case, however, are undisputed.

The parties were married on June 20, 1987.  On July 30, 2015, the wife filed a complaint for divorce.  The husband filed a counterclaim for divorce with leave of the circuit court on December 16, 2015.  The parties then engaged in discovery and otherwise prepared for divorce litigation for approximately two years.

The parties reached an agreement in this matter on January 19, 2017, the date that a full evidentiary hearing was scheduled in the circuit court.  Pursuant to Code § 20-155,[2] the parties read their agreement into the record.  The first line of the agreement stated that "[t]he parties by counsel have reached an agreement with regard to all issues in this matter."  The agreement then

---

[2] In pertinent part, Code § 20-155 states as follows:

> Married persons may enter into agreements with each other for the purpose of settling the rights and obligations of either or both of them, to the same extent, with the same effect, and subject to the same conditions, as provided in [Code] §§ 20-147 through 20-154 for agreements between prospective spouses, except that such marital agreements shall become effective immediately upon their execution.  If the terms of such agreement are . . . recorded and transcribed by a court reporter and affirmed by the parties on the record personally, the agreement is not required to be in writing and is considered to be executed.

discussed spousal support and the division of the parties' marital property. Notably, the agreement did not contain a provision addressing any omitted or nondisclosed property.

Among other things, the parties' agreement divided several investment and bank accounts and addressed the payment of the parties' credit card debt. The agreement also provided that the husband would make the mortgage payments on the parties' marital home and a rental property. These payments included the cost of insurance and the taxes associated with the properties. The agreement awarded the husband a credit for any "principal paydown" on the marital home accruing from the mortgage payments he made from February 1, 2017, until the sale of the property.

The agreement also stated that the husband would pay the wife $65,000 for attorney's fees. While the agreement initially stated that the husband would make this payment within ninety days, the parties modified this term as their agreement was read into the record. The parties agreed that the husband would make the $65,000 payment as he cashed out certain life insurance policies, with the full balance of the payment due within 120 days of the sale of the parties' marital home and rental property. When counsel finished reading the parties' agreement into the record, the parties personally affirmed that they agreed to the stated terms.

On May 19, 2017, the circuit court entered an order affirming the entirety of the parties' January 19, 2017 agreement. On August 14, 2017, the circuit court entered two additional orders affirming specific aspects of the same agreement. At some point following the entry of the August 14, 2017 orders, the wife requested the circuit court to divide an additional retirement account between the parties. The wife maintained that a Fidelity Roth IRA with an account number ending in 7600 had been omitted from the parties' January 19, 2017 agreement because the husband failed to disclose the account during discovery. The wife requested the circuit court

to divide the account evenly between the parties in a manner similar to the retirement accounts addressed in the parties' agreement.

On December 14, 2017, the wife filed a motion to compel the husband to pay her half of the value of two escrow refund checks that he received following the sale of the parties' marital home and rental property. The wife noted that these checks were refunds for tax and insurance payments associated with the properties. As the checks were written to both the husband and the wife, the wife claimed that she was entitled to half of their value.

The husband maintained that the wife was not entitled to receive any portion of the Fidelity Roth IRA or the refund checks. As the Fidelity Roth IRA was not addressed by the parties' January 19, 2017 agreement and it was held in the husband's name alone, the husband argued that the IRA was his property. The husband also argued that the refund checks simply compensated him for overpayments regarding the taxes and insurance on the parties' marital home and rental property that he made from his post-separation income. Therefore, the husband claimed that the refund checks were also his property.

Additionally, the husband requested a credit for a $20,000 payment that he made for the wife's attorney's fees before the parties entered into the January 19, 2017 agreement. While the husband acknowledged that he was obligated to pay $65,000 for the wife's attorney's fees pursuant to the parties' agreement, he argued that the $20,000 payment reduced this obligation to $45,000. Alternatively, the husband requested a credit for the $20,000 payment pursuant to the provision of the January 19, 2017 agreement addressing the parties' credit card debt. The husband argued that the credit card debt provision applied to the $20,000 payment at issue because the payment was directly applied to the balance on a credit card that the wife used to pay her attorney's fees.

The circuit court held a hearing regarding the remaining issues in the parties' divorce case on December 21, 2017. After hearing argument from the parties, the circuit court equally divided the Fidelity Roth IRA between them. The circuit court then noted that the refund checks at issue resulted from the dissolution of an escrow account following the sale of the parties' marital home and rental property. As the parties agreed to split the net proceeds resulting from the sale of the properties in their January 19, 2017 agreement, the circuit court divided the refund checks equally between the parties. The circuit court also refused to award the husband a credit for the previous $20,000 payment that he made for the wife's attorney's fees.

On February 27, 2018, the circuit court entered an order memorializing its decision from the December 21, 2017 hearing. On March 23, 2018, the circuit court held another hearing to resolve disputes between the parties regarding the language of their final decree of divorce. At the beginning of the hearing, counsel for the parties confirmed that an equitable distribution hearing had not occurred in this case because the parties resolved that matter by agreement. The circuit court entered a final decree of divorce at the conclusion of the hearing setting forth the terms of the parties' January 19, 2017 agreement and the February 27, 2018 order. This appeal followed.

## II. ANALYSIS

On appeal, the husband contends that the circuit court erred by distributing the parties' marital property in a manner that contradicted the terms of their January 19, 2017 agreement. The husband maintains that the circuit court went beyond the terms of the parties' agreement by distributing half of the Fidelity Roth IRA to the wife. As the agreement did not address this account, the husband argues that the circuit court added a term to the parties' agreement when it divided the account equally between the parties. Additionally, the husband argues that the circuit court erred by dividing the escrow refund checks between the parties.

- 5 -

The husband also contends that the circuit court erred by refusing to award him a $20,000 credit based on the payment that he made for the wife's attorney's fees before the parties entered into the January 19, 2017 agreement. The husband argues that this $20,000 payment reduced the $65,000 attorney's fees obligation set forth in the parties' agreement to $45,000. Alternatively, the husband contends that he was entitled to a credit for the payment at issue pursuant to the provision of the January 19, 2017 agreement addressing the parties' credit card debt.

For the following reasons, we conclude that the circuit court erred by distributing the Fidelity Roth IRA in a manner that contradicted the terms of the parties' January 19, 2017 agreement. However, we also conclude that the parties' agreement did not entitle the husband to receive the entirety of the escrow refund checks or a credit for the previous $20,000 payment that he made for the wife's attorney's fees.

### A. THE EFFECT OF THE JANUARY 19, 2017 AGREEMENT

As an initial matter, we must determine whether the parties intended for the January 19, 2017 agreement to constitute a comprehensive agreement resolving all of the issues in the present case. Accordingly, we must construe the terms of the parties' agreement as it was expressed on the record. "Property settlement agreements are contracts, and the rules of interpretation for contracts in general apply" to them. Recker v. Recker, 48 Va. App. 188, 192, 629 S.E.2d 191, 193 (2006). Questions involving the interpretation of a contract present issues of law that we review *de novo* on appeal. Plunkett v. Plunkett, 271 Va. 162, 166, 624 S.E.2d 39, 41 (2006).

"A court's primary focus in considering disputed contractual language is to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in their agreement." Pocahontas Mining LLC v. CNX Gas Co., 276 Va. 346, 352, 666 S.E.2d 527, 531 (2008). "Contracts are construed as written, without adding terms that were not

included by the parties. Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." Plunkett, 271 Va. at 167, 624 S.E.2d at 42 (citations omitted) (quoting TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002)). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." Stacy v. Stacy, 53 Va. App. 38, 44, 669 S.E.2d 348, 351 (2008) (*en banc*) (quoting Irwin v. Irwin, 47 Va. App. 287, 293, 623 S.E.2d 438, 441 (2005)).

> In giving effect to the intention of the parties "as expressed by them in the words they have used," Irwin, 47 Va. App. at 293, 623 S.E.2d at 441 (citation and internal quotation marks omitted), we are not to treat any word or clause in the [contract] "as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly," Dominion Sav. Bank, FSB v. Costello, 257 Va. 413, 417, 512 S.E.2d 564, 567 (1999).

Id. at 48, 669 S.E.2d at 352-53.

The first line of the January 19, 2017 agreement stated that "[t]he parties by counsel have reached an agreement *with regard to all issues in this matter*." (Emphasis added). Thus, the plain terms of the parties' agreement clearly established that they intended for the agreement to be comprehensive. The parties intended to resolve "all issues" pertaining to the matter of equitable distribution in the January 19, 2017 agreement, and they relied on that agreement throughout the proceedings to distribute their marital property. With the exception of certain photographs and an art print, the parties did not introduce evidence regarding their marital property in the hearings before the circuit court. Moreover, the circuit court did not conduct an equitable distribution hearing in this case.

It is well established that a court must honor an agreement between parties addressing the distribution of their marital property. In pertinent part, Code § 20-109(C) states as follows:

> In suits for divorce, . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract.

Although Code § 20-109 is a statute that primarily addresses spousal support, Code § 20-109(C) also applies to agreements regarding the equitable distribution of property. See Parra v. Parra, 1 Va. App. 118, 128, 336 S.E.2d 157, 162 (1985); see also Code § 20-107.3(I) (referencing Code § 20-109). "[T]o the extent that the parties have already stipulated to a particular disposition of their property, the court may not decree an equitable distribution award that is inconsistent with that contract." Parra, 1 Va. App. at 128, 336 S.E.2d at 162-63. Therefore, in the present case, the circuit court could not distribute the parties' marital property in a manner that contradicted the terms of the January 19, 2017 agreement.

Having determined that the parties intended for the January 19, 2017 agreement to be a comprehensive resolution of the matters presented in this case and that the circuit court was bound by the terms of that agreement,[3] we will now address the circuit court's distribution of the particular assets at issue on appeal.

## B.  THE FIDELITY ROTH IRA

The husband contends that the circuit court erred by distributing half of the value of the Fidelity Roth IRA to the wife because that account was not included in the parties' January 19, 2017 agreement. We agree with the husband's argument.

In the first line of the January 19, 2017 agreement, the parties stated that they had resolved "all issues in this matter," including the matter of equitable distribution. As the parties

---

[3] We note that neither party argued that the January 19, 2017 agreement was unconscionable or moved to set aside the agreement on other grounds.

- 8 -

intended for the agreement to be a comprehensive resolution of the matter of equitable distribution, the circuit court was prohibited from distributing property that was not addressed in the agreement. Although the agreement failed to expressly distribute all of the parties' marital property, the circuit court could not supplement the terms of the agreement by distributing property that the parties failed to address. To do so would add terms to the parties' agreement and render its first term meaningless. See Plunkett, 271 Va. at 167, 624 S.E.2d at 42; Stacy, 53 Va. App. at 48, 669 S.E.2d at 352-53.

While the wife contends that the husband failed to disclose the Fidelity Roth IRA before the parties entered into the January 19, 2017 agreement, the parties did not include a term in the agreement addressing omitted or nondisclosed property. Rather, the parties stated that the January 19, 2017 agreement was a comprehensive resolution of the issues between them. The parties had engaged in discovery for approximately two years before they entered into the January 19, 2017 agreement, and the agreement addressed the distribution of several other investment and bank accounts.

As the plain language of the parties' agreement established that they intended to resolve the entire matter of equitable distribution in their January 19, 2017 agreement, the circuit court could not expand the terms of the agreement by distributing an asset that the agreement failed to address. Accordingly, the circuit court erred by dividing the Fidelity Roth IRA between the parties.

C. THE ESCROW REFUND CHECKS

The husband also contends that the circuit court erred by distributing half of the value of the escrow refund checks to the wife. As previously stated, these checks were issued following the sale of the parties' marital home and rental property to compensate the parties for the overpayment of taxes and insurance costs associated with the properties. The husband argues

- 9 -

that he was entitled to receive the entirety of the refund checks because he made the mortgage payments regarding the marital home and rental property pursuant to the terms of the January 19, 2017 agreement. As the mortgage payments included the tax and insurance payments that led to the refunds, the husband maintains that the refund checks constituted his separate property.

We acknowledge that the January 19, 2017 agreement did not specifically address the escrow refund checks at issue. Unlike the Fidelity Roth IRA, however, the refund checks were generally addressed by a provision of the parties' agreement. In the January 19, 2017 agreement, the parties agreed to equally divide the proceeds of the sale of the marital home and rental property. Under the circumstances of the present case, we conclude that the refund checks were proceeds from the sale of these properties.

The refund checks at issue resulted from the dissolution of an escrow account following the sale of the parties' marital home and rental property. Although the refund checks compensated the parties for payments that were made before these properties were sold, the funds held in escrow were only realized upon the sale of the properties and were only available to the parties following the sale. As the refunds were obtained by virtue of the sale of the parties' real property, the circuit court did not err by determining that they were proceeds of the sale.

While the husband contends that he was entitled to the entirety of the refund checks because the January 19, 2017 agreement required him to make the mortgage payments regarding the parties' real property, the agreement only entitled the husband to a limited credit for these payments. Specifically, the agreement only entitled the husband to receive a credit for any "principal paydown" resulting from the mortgage payments on the parties' marital home. Notably, the husband was not entitled to receive a credit or other form of reimbursement for the remainder of the mortgage payments pursuant to the terms of the parties' agreement, including

the portion of the mortgage payments that were held in escrow for the payment of the taxes and insurance costs associated with the properties. Therefore, the husband was not entitled to the entirety of the escrow refund checks pursuant to the January 19, 2017 agreement, and the circuit court did not err by dividing them equally between the parties.

## D. THE HUSBAND'S PREVIOUS $20,000 ATTORNEY'S FEES PAYMENT

The husband acknowledges that he was obligated to pay the wife $65,000 for attorney's fees pursuant to the parties' January 19, 2017 agreement. The husband, however, contends that he was entitled to receive a $20,000 credit for a payment that he made for the wife's attorney's fees before the parties entered into the agreement. The husband notes that the January 19, 2017 agreement simply required him to pay the wife "the amount of $65,000 for attorney's fees." As the agreement did not specify that the husband owed the wife an "additional" $65,000 for attorney's fees, the husband maintains that he was entitled to receive a credit for his previous payment. Alternatively, the husband argues that he should have received a credit for the prior $20,000 payment pursuant to the provision of the January 19, 2017 agreement addressing the payment of the parties' credit card debt. We disagree with both of the husband's arguments.

As previously stated, the plain language of the January 19, 2017 agreement established that the parties intended for it to be a comprehensive resolution of all of the matters presented in this case, including attorney's fees, and the circuit court was bound by the terms of that agreement. See Code § 20-109(C). Although the January 19, 2017 agreement failed to expressly state that the husband was required to pay the wife an "additional" $65,000 for attorney's fees, the agreement also did not expressly award the husband a credit for any prior payments on his attorney's fees obligation. In the absence of a term in the parties' agreement awarding the husband a credit for the $20,000 payment at issue, the circuit court could not award the husband a credit for the payment without impermissibly adding a term to the parties' agreement.

Nevertheless, we note that the husband made the $20,000 payment at issue before the parties entered into the January 19, 2017 agreement. Accordingly, the parties could have easily addressed the payment in the agreement if they intended for the husband to receive a credit for it. The failure of the parties to include a provision regarding the $20,000 payment under these circumstances implied that the parties did not intend for the husband to receive a credit for that payment.

Furthermore, we note that the parties' agreement established that the husband would satisfy the attorney's fees obligation at some point following the execution of the agreement. Initially, the parties agreed that the husband would pay the wife $65,000 for attorney's fees within ninety days. The parties then modified this term by agreeing that the husband would make the $65,000 payment in installments as he cashed out certain life insurance policies, with the full balance of the payment due within 120 days of the sale of the parties' real property. These terms implied that the husband would pay the wife an additional $65,000 at some point after the parties entered into the January 19, 2017 agreement.

While the husband contends that he was also entitled to receive a credit for the $20,000 payment pursuant to the provision of the January 19, 2017 agreement addressing the payment of the parties' credit card debt, this argument is without merit. Although the $20,000 payment was applied to the balance on the credit card that the wife used to pay her attorney's fees, the provision at issue did not apply to this credit card debt.

The credit card debt provision of the January 19, 2017 agreement addressed the debts on four specific credit cards and provided values for the debts owed on each card as of the date of the parties' separation. Specifically, the provision referred to: (1) an American Express card with a balance of $7,122; (2) an American Express card with a balance of $3,055; (3) a Citi MasterCard with a balance of $246; and (4) a Chase MasterCard with a balance of $78. The

provision clarified that "[t]hose are the four debts that existed as of the date of separation that were not otherwise paid by agreement." The provision then stated,

> To the extent that either party has paid those debts off, there can be an offset on payments that are otherwise owed by the parties with respect to like accounts, non-investment accounts. So for instance, if the defendant owes the plaintiff $10,000 from a money market account but the plaintiff owes the defendant $5,000 *for payment of debts that were just referenced*, the defendant's obligation to the plaintiff would be reduced by $5,000.

(Emphasis added).

The plain terms of the credit card debt provision limited its application to the four specific debts that it referenced. While the provision allowed the husband or the wife to receive an offset or credit if he or she paid the referenced credit card debts, the offset provision did not extend to the payment of other debts. In fact, the provision indicated that the parties' other debts had been "paid by agreement." As the $20,000 payment at issue on appeal was applied to a credit card debt that was not referenced in the credit card debt provision of the January 19, 2017 agreement, the husband was not entitled to a credit based on the payment.

We conclude that the circuit court did not err by refusing to award the husband a credit for the $20,000 payment that he made for the wife's attorney's fees before the parties entered into the January 19, 2017 agreement. The parties' agreement did not contain a provision awarding the husband a credit for the payment, and the circuit court could not add a term to the agreement to achieve that result.

### E.  APPELLATE ATTORNEY'S FEES AND COSTS

Both parties request an award of the attorney's fees and costs incurred in connection with this appeal. "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." Friedman v. Smith, 68 Va. App. 529, 545, 810 S.E.2d 912, 919-20 (2018); see also Rule 5A:30(b). In determining whether to award appellate attorney's fees and costs to a

party, we consider a number of factors, including "whether the requesting party prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay in pursuit of its interests, as well as 'all the equities of the case.'" Friedman, 68 Va. App. at 546, 810 S.E.2d at 920 (quoting Rule 5A:30(b)(3)-(4)); see also O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). As each party prevailed on certain issues presented on appeal, we conclude that an award of appellate attorney's fees and costs is not warranted. Therefore, we deny each party's request.

## III. CONCLUSION

In summary, we conclude that the parties intended for the January 19, 2017 agreement to be a comprehensive resolution of all the matters presented in this case. As the Fidelity Roth IRA was not addressed by the parties' agreement, the circuit court erred by dividing it between the parties. The circuit court did not err, however, by dividing the escrow refund checks equally between the parties as proceeds of the sale of the parties' real property. As the husband was not entitled to a credit for the previous $20,000 payment that he made for the wife's attorney's fees pursuant to the January 19, 2017 agreement, the circuit court did not err by refusing to award the husband a credit for the payment. Accordingly, we affirm the circuit court's decision in part, reverse the circuit court's decision in part, and remand this case for the entry of an order consistent with this opinion.

Affirmed in part, reversed in part, and remanded.