## Richmond

JUDSON S. SMITH

v.

ELODIE H. SMITH

No. 2125-91-2

Decided November 24, 1992

COUNSEL

A. Davis Bugg (James C. Breeden; Rumsey, Breeden, Hubbard, Bugg & Terry, on briefs), for appellant.

William L. Lewis (Lewis & Ware, on brief), for appellee.

OPINION

**FITZPATRICK, J.**—Judson S. Smith (husband) appeals the determination by the trial court that Elodie H. Smith (wife) did not owe him any compensation pursuant to paragraph 7 of their property settlement agreement. Husband argues that (1) the plain meaning of the agreement provides that the parties are liable, between themselves, for their respective shares of income tax liability, irrespective of the fact that no taxes were actually owed to the taxing authority; and (2) the trial court erred in attempting to discern the intent of the parties beyond the clear intent expressed in the written agreement. Finding no merit in either claim, we affirm the trial court's decision.

By decree of divorce *a vinculo matrimonii* entered on February 27, 1989, the Circuit Court of Lancaster County granted the husband a divorce in accordance with Code § 20-91(9). The parties' property settlement agreement was incorporated by reference into the divorce decree. A dispute arose between the parties regarding their respective responsibility for taxes associated with their joint 1988 tax return.

The property settlement agreement required the parties to file a joint income tax return for the 1988 tax year. Accordingly, Edward G. Burfeindt, an accountant employed by the husband, prepared the 1988

tax return and calculated that the wife would have incurred a tax liability of $8,004, but for the use of certain carryforward tax benefits that had accrued to the husband. These benefits offset the wife's 1988 income, resulting in a zero tax liability. Husband sought reimbursement from the wife for the amount calculated by Mr. Burfeindt. Wife refused to reimburse him, as no taxes were actually owed to the taxing authorities. She then filed a motion seeking a judicial determination of this question.

Paragraphs 7 and 13 of the property settlement agreement provide in pertinent part:

    7.   The parties' tax returns shall be filed on the following basis:

        b.   The husband and wife shall file joint income tax returns for 1988. Each party shall be responsible for paying the taxes (and any interest or penalties) assessed on his or her respective income using the allocation method for income, deductions, exemptions, and credits which has been applied in past years by the tax return preparer, except that the husband shall be responsible for the income taxes due on the sale of the residence. The husband shall either pay the income taxes due on the sale or offset the taxes by carryover losses or other tax benefits available to him. The husband shall select a competent accountant to prepare the 1988 income tax returns, and he shall pay the accountant for preparing them.

    13.   Except as herein expressly stated, neither party shall be liable for any debts, contract, obligations, or liabilities of the other, either now existing or hereafter incurred.

The trial court heard testimony from the parties and from their accountants. The husband and his accountant testified that "assessed" was intended by the parties to mean "calculated" and that the parties intended that their respective tax responsibilities would be allocated and adjusted between them whether or not any tax liability was owed. The wife and her accountant testified that "assessed" was intended by the parties to refer only to the actual payment of taxes and that the parties did not intend to require allocation of responsibilities between them where no tax was actually owed the taxing authorities.

The trial court ruled in favor of the wife. It found that because no taxes were owed as a result of the husband's deductible losses that

offset the wife's tax liability, the wife was not obligated to pay her former husband for the value of any net carryover loss deductions. This dispute centers around the meaning of the word "assessed" as used in paragraph 7(b) of the parties' property settlement agreement.

■ Property settlement agreements entered into pursuant to a divorce proceeding are contracts; "therefore, we must apply the same rules of interpretation applicable to contracts generally." *Tiffany v. Tiffany*, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985); *see also Paul v. Paul*, 214 Va. 651, 653, 203 S.E.2d 123, 125 (1974). "In reviewing the agreement, we must gather the intent of the parties and the meaning of the language, if we can, from an examination of the entire instrument, giving full effect to the words the parties actually used." *Layne v. Henderson*, 232 Va. 332, 337-38, 351 S.E.2d 18, 22 (1986).

The agreement before us is comprehensive in scope and purports to resolve all of the financial aspects associated with the dissolution of the parties' marriage. The proper interpretation of paragraphs 7 and 13 cannot be determined without reference to the subject matters discussed in other paragraphs of the agreement. The undisputed portions of the agreement address, *inter alia*, the division of property rights, release of marital rights, sale of the marital residence and procedural issues. Consideration of these other paragraphs provides us with a general understanding of how the parties organized their agreement. Paragraph 7 is concerned exclusively with the preparation of income tax returns and the payment of "taxes (and any interest or penalties) assessed."

Each subparagraph of paragraph 7 focuses upon tax-specific issues, such as: (1) filing joint or separate income tax returns; (2) paying "taxes, interest or penalties;" (3) electing "the lifetime exclusion of gain on the sale of the residence;" (4) improperly reporting "any income, deduction, exemption or credit;" and (5) the use of "the allocation method . . . which has been applied in past years by the tax return preparer." The entirety of paragraph 7 is written in technical language, having specific legal significance in the field of income taxation.

■ In the construction of an instrument containing technical terms "no rule is better settled than that technical words are presumed to be used technically, unless the contrary appears on the face of the instrument, and that words of definite legal signification are to be understood as used in their definite legal sense." *Nye v. Lovitt*, 92 Va. 710,

713-14, 24 S.E. 345, 346 (1896). Accordingly, we conclude from the organization of the terms in the agreement that the appropriate interpretation of the phrase "taxes (and any interest or penalties) assessed" must be gleaned from the body of law derived from the technical use of these tax-specific words.

The husband requests that we adopt the definition relied upon in *Unit Owners Ass'n of Buildamerica-1 v. Gillman*, 223 Va. 752, 292 S.E.2d 378 (1982), where the Court approved the following definition of "assessment," as that term was used in the Condominium Act:

> In a general sense, the process of ascertaining and adjusting the shares respectively to be contributed by several persons towards a common beneficial object according to the benefit received.

*Id.* at 764, 292 S.E.2d at 384 (quoting *Black's Law Dictionary* 106 (5th ed. 1979)).[1] We find it inappropriate to use this definition of "assessment" for the word "assessed" in the context of this case. The facts and context of *Buildamerica-1* are clearly distinguishable from the situation in the case at bar. *Buildamerica-1* involved the powers available to a condominium board under the Virginia Condominium Act. There is no logical reason to adopt that definition in a case involving a contract dispute regarding the filing and liability for personal income taxation.

The disputed phrase in the property settlement agreement is, "[e]ach party shall be responsible for paying the taxes (and any interest or penalties) assessed on his or her respective income." In *Knopp Brothers, Inc. v. Department of Taxation*, 234 Va. 383, 362 S.E.2d 897 (1987), the Court held that "[t]he word [assessment], in the context of [the correction of erroneous tax assessment] statutes, means the amount of money in taxes the particular taxpayer is supposed to pay." *Id.* at 386, 362 S.E.2d at 899. In addition, Code § 58.1-1820(2) defines the term "assessment" as follows:

> 2. "Assessment," as used in this subtitle, shall include . . . self-assessments made by a taxpayer upon the filing of a return.

---

[1] We note that *Black's Law Dictionary* 116-17 (6th ed. 1990) contains other definitions of the word "assessment" under the subcategory of taxation. The majority of those alternative definitions are consistent with the wife's argument. In addition, we note that Webster's dictionary defines "assessment" as "a valuation of property usually for the purpose of taxation," and "assess" is defined as "to determine the rate of (as a tax, rate or fine)." *Webster's Third New International Dictionary* 131 (1981).

*Black's Law Dictionary* 116 (6th ed. 1990) also defines "assessed" as being "[e]quivalent to 'imposed.' To value or appraise." The word "tax" is defined as:

> A charge by the government on the income of an individual . . . . The objective in assessing the tax is to generate revenue to be used for the needs of the public. A pecuniary burden laid upon individuals or property to support the government, and is a payment exacted by legislative authority.

*Black's Law Dictionary* 1457 (6th ed. 1990). Accordingly, we find that the plain meaning of the phrase "taxes (and any interest or penalties) assessed," as used in the context of an agreement concerning the joint filing of income tax returns, means those actual sums of money paid or payable to governmental taxing authorities.[2]

█ If the parties had intended the phrase to mean anything other than the amounts actually owed to the taxing authorities they could have easily so provided. "No matter how inartfully the [terms of the agreement] may have been originally drawn, we cannot now make a new contract for the parties. We can only construe the terms as written." *Smith v. Smith*, 3 Va. App. 510, 516, 351 S.E.2d 593, 597 (1986) (citing *Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983)). "The fact that the parties attribute to the same terms variant meanings does not necessarily imply the existence of ambiguity where there otherwise is none." *Id.* at 513-14, 351 S.E.2d at 595 (citing *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)). We hold that the terms of the disputed phrase are unambiguous in the context written, and, therefore, the wife is not liable to the husband under paragraph 7 of their agreement because no taxes were actually due the taxing authorities. In addition, because no taxes were due the taxing authorities, the husband has not been forced to assume a debt or liability for the wife. Therefore, paragraph 13 of the agreement is irrelevant to the case at bar.

---

[2] We are unpersuaded by the husband's argument that if he had foreseen the trial court's ruling he could have refused to permit his wife's use of his loss carryforwards, and the wife would have been liable to the government for $8,004. While it is true that the husband could have refused his wife the use of such deductions, he was required to file a joint return for the 1988 tax year pursuant to their property settlement agreement. As such, he was required to use his net operating loss carryforwards to offset taxable income, to the extent that there is taxable income, to fully utilize the deduction. *See* 26 U.S.C. § 172.

■ Finally, we find no error in the trial court's admission of parol evidence as to the allocation method the parties had previously employed. Paragraph 7(b) requires that the taxes assessed on the respective income of the parties be determined by "the allocation method for income, deductions, exemptions and credits which has been applied in past years by the tax return preparer." However, no language within the agreement articulates what "the allocation method" is, nor how it is utilized. Therefore, parol evidence is admissible under the partial integration doctrine:

> Where the entire agreement has not been reduced to writing, parol evidence is admissible, not to contradict or vary its terms but to show additional independent facts contemporaneously agreed upon, in order to establish the entire contract between the parties.

*Renner Plumbing v. Renner*, 225 Va. 508, 515-16, 303 S.E.2d 894, 898 (1983).

The parties agreed to use the same allocation method used by them in the past, but they did not include a description of the method in the agreement itself. Without the benefit of extrinsic evidence, the trial court had no means of determining the allocation of taxes assessed to the respective incomes of the parties. Accordingly, the trial court properly admitted and considered evidence of the "allocation method" applied by the accountant in past years.

The parol evidence received from the parties and their respective accountants revealed that in past years the husband had never requested payment from the wife in excess of the proportionate amount of total taxes actually paid to the state or federal governments, nor in settlement of the value of any deductions taken. While this evidence was admitted for the purpose of determining what the parties' former allocation method entailed, it also supported the conclusion that the parties intended the interpretation of the disputed phrase that we have set forth above.

Although we do not interpret the parties' prior conduct as dispositive of the question of interpretation regarding the phrase "taxes . . . assessed," we do note that even if we had adopted the husband's interpretation, he would not be entitled to any recovery from the wife, because their "allocation method" did not provide for the compensation of the value of deduction benefits applied to their joint returns.

Because the proper construction of the disputed agreement is in accord with that rendered in the trial court, we affirm the decision below.

*Affirmed.*

Benton, J., and Coleman, J., concurred.