COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Beales and Decker
Argued at Richmond, Virginia

BRIAN GREEN

v.     Record No. 0380-17-4

SHARON ROBERTSON, F/K/A
  SHARON GREEN

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
MARCH 20, 2018

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Charles S. Sharp, Judge

Wesley D. Wornom for appellant.

Lawrence D. Diehl (Barnes & Diehl, P.C., on brief), for appellee.


Brian Green ("father") appeals the decision of the Circuit Court of Stafford County

awarding Sharon Robertson ("mother") $7,347.64 for uncovered medical expenses incurred by

the parties' son. The circuit court also found that father was not in contempt for failing to

comply with the parties' final decree of divorce ("divorce decree"), and neither party appeals that

decision.

I. BACKGROUND

Mother and father were married on April 22, 1988 in Alexandria, Virginia. Two children

were born of the marriage – B.G., born October 5, 1990, and M.G., born February 28, 1993.[1]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although both children reached the age of majority prior to the litigation that led to this appeal, we use their initials here in order to try to better protect their privacy.

Father and mother separated on September 19, 1998, and they entered into a property settlement agreement (the "agreement") on February 25, 2000. Section 15 of the agreement, which is central to father's appeal, states:

> The Husband [father] agrees to maintain the minor children as a beneficiary of his present medical/hospitalization policy for so long as they may be entitled to said coverage. The parties agree to share equally the cost of any medical or dental expenses (including orthodontic) of the children not covered by said insurance.

On April 10, 2000, the Circuit Court of Stafford County entered the final divorce decree. The parties' agreement was "ratified and approved and incorporated by reference as if all of its terms and conditions were setout" in the divorce decree. The decree also stated, "Health care coverage for the children is currently being provided by Respondent, Brian M. Green [father], who will continue to provide said coverage for said children by Agreement with Sharon E. Green [mother]."

On July 15, 2015, mother filed a motion to reopen the divorce case in order to enforce the terms of the agreement as incorporated by the final divorce decree. The order reopening the case was signed on July 17, 2015. On August 6, 2015, mother filed a pleading with the circuit court entitled "Affidavit and Petition for Rule to Show Cause" stating that the parties' son, B.G., became very ill during his junior year in college. B.G. was diagnosed with a serious medical condition, and he then suffered a stroke, from which he needed to recover. The affidavit and petition for rule to show cause alleged that as a result of B.G.'s medical condition, B.G. incurred uncovered medical expenses of $15,308.48. Mother's affidavit and petition for rule to show cause sought an award to reimburse her for one-half of these expenses pursuant to the divorce decree, which incorporated the terms of the agreement, including Section 15. The affidavit and petition for rule to show cause alleged that mother had requested reimbursement from father for these expenses, but father had failed to pay. The affidavit and petition for rule to show cause

asked the circuit court to issue a rule to show cause requiring father "to show cause . . . why he has failed to obey the aforesaid Final Decree of Divorce *A Vinculo Matrimonii* entered by this Court on April 10, 2000." It also asked "that the Defendant [father] be required to immediately reimburse the Plaintiff [mother] for his share of the child's uncovered medical expenses," that father be punished for his contempt and incarcerated, that he be "required to pay all attorney's fees and costs incurred in connection with this Rule to Show Cause and the Plaintiff's efforts to enforce and uphold the dignity of this Court's Order," and that the circuit court grant "such other and further relief as to the Court deems mete and just."

On August 13, 2015, the circuit court entered a rule to show cause requiring father to appear before the court to "show cause, if any he can, why he failed to obey the aforesaid Order [the divorce decree] . . . ."

On or about August 29, 2016, mother also filed a complaint for breach of contract against father for his failure to reimburse her for B.G.'s medical expenses. Father filed an answer to the complaint, alleging that mother could not maintain a cause of action based on contract because the agreement was incorporated into and "merged out of existence" by the divorce decree. Father also filed a counterclaim against mother for attorney's fees alleging that mother was in breach of the agreement simply by making the claim that father must pay uncovered medical expenses for their adult child. On October 11, 2016, mother moved for leave to nonsuit her complaint for breach of contract.[2] She also filed a demurrer to father's counterclaim.

At a hearing on November 1, 2016, the trial court entered an order sustaining mother's demurrer on father's counterclaim and granting mother's motion to nonsuit the complaint for

---

[2] At the hearing on November 1, 2016, mother's trial counsel admitted that the agreement had been merged into the divorce decree, preventing her from pursuing the breach of contract matter.

breach of contract. Consequently, the only matter remaining before the trial court was mother's affidavit and petition for rule to show cause.

With respect to the affidavit and petition for rule to show cause, the trial court declined to hold father in contempt, finding that father's failure to comply with the divorce decree was based on a reasonable, although incorrect, reading of Section 15 of the incorporated agreement. The trial court then proceeded with the hearing on the other relief requested in the affidavit and petition for rule to show cause, besides the contempt, so as to determine the amount of uncovered medical expenses incurred by B.G., and then ordered father to pay mother the sum of $7,347.64 for his share of the expenses. The trial court found the following relevant facts during the hearing:

> 19. The word minor is not limiting in this context [in Section 15 of the agreement]. It is descriptive. It describes the children who are the subject of this provision.
>
> 20. The children who at the time in the execution of the agreement were minors, that word, in its common sense reading, does not limit their entitlement only to the minority, but again simply is descriptive of who we are talking about. The kids were minor [sic] at the time of this agreement. This child being a minor at the time of this agreement, he is still now entitled and is apparently covered by insurance.
>
> 21. The court finds that sentence two talking about reimbursement during the coverage of said insurance covers this child. That's the only sensible reading of these two sentences. As long as he's entitled to coverage, even though he is now an adult, he is equally entitled to reimbursement of reasonable medical expenses, and that is how the court rules on the interpretation of that.
>
> 22. The court took evidence as to the figured [sic] owed by the Defendant and finds that the amount of expenses is the amount agreed upon plus one-half of each of these figures on this trial aid [sic] the court has received after the Marriott bill is deleted.
>
> 23. The court feels that Defendant's nonpayment was a legitimate exercise of his understanding of the agreement. The fact that we are here arguing about it shows that reasonable minds can disagree as to what that language means, and to rely on one's reasonable

interpretation I do not think constitutes contempt and does not give rise to an entitlement to attorney's fees. The motion for attorney's fees on both sides is denied . . . .

Father objected to the trial court's order and appealed the matter to this Court. Father assigns the following errors to the trial court's decision:

1. The Court failed to apply the "plain meaning" test, and the standard of review is a determination by the appellate Court of the plain meaning of the words in a contract.

2. The Court erred when it granted relief, ordering Defendant to pay uncovered medical expenses for "minor children" until the age of 26 after finding Defendant to not be in Contempt of the Decree of Divorce. With a finding of no contempt, there was no basis to grant relief, because no other claim for relief was pending. The Agreement had been merged into the Decree of Divorce.

3. The court erred when it held that Defendant obligated himself in a contract to provide insurance for "minor children" until the age of 26 even though the Patient Protection and Affordable Care Act, aka ("Obamacare") was enacted in 2010, more than a decade after the Agreement was signed and the decree was entered. As stated in the hearing, under Obamacare, the maximum age for coverage of children of federal employees was terminated at the age of 21. Contracts are to be interpreted at the time that they are made.

4. Interpretation of a contract must give meaning to all words in the contract, adding no words, and leaving no words out, as argued at the hearing.

5. The Court failed to give meaning to the word "minor" child, ruling that "it was descriptive," but then ignoring the limitation of the description to non-adult children. There aren't any words in the Agreement that obligate Defendant to provide medical insurance coverage for an adult child. The parties and the Court entering the decree couldn't have known that Obamacare would be entered a decade later, which allowed, not required, adult children to be covered on their parents' medical insurance until the age of 26.

- 5 -

II. ANALYSIS

A. <u>The Trial Court's Award to Mother After Declining to Find Father in Contempt</u>

We address father's second assignment of error first because it is potentially dispositive to father's appeal. Father argues that, because the only motion before the trial court was the show cause motion, the only action the trial court was authorized to take was to find father in contempt and require him to pay the arrearage to purge himself of the contempt. According to father, when the court declined to find father in contempt, it was without authority to award mother the $7,347.64 for his half of the uncovered medical expenses.

We are unpersuaded by father's argument that the trial court was limited to granting mother relief only if it first found father in contempt. The trial court certainly possessed the authority to enforce the divorce decree. See Branch v. Branch, 144 Va. 244, 251-52, 132 S.E. 303, 305-06 (1926) ("Courts are invested with the power and charged with the duty of enforcing their decrees. Such decrees are the mandates of the law, and courts must have the power of enforcing them, if organized society is to be maintained."). See also Code § 20-109.1 ("Where the court affirms, ratifies and incorporates by reference" a property settlement into a decree, it "shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree."). However, father argues that if mother wanted relief other than a finding of contempt, she was required to file a motion to enforce, not an affidavit and petition for rule to show cause.

In this case, we find the distinction between the title of these two motions an inconsequential matter of form. Mother's affidavit and petition for rule to show cause recited the relevant facts required for the trial court to award her relief – and specifically requested the relief

of an award of that $7,347.64.[3]  It stated that the parties entered into an agreement requiring father to pay for half of B.G.'s uncovered medical expenses, that the agreement was ratified, approved, and incorporated into a final divorce decree,[4] and that father failed to comply with the terms of the final divorce decree by failing to pay for half of B.G.'s uncovered medical expenses. Most importantly, mother's affidavit and petition for rule to show cause also specifically requested the relief ultimately granted by the trial court.  In addition to the request that father be punished for his contempt, it requested "that the Defendant [father] be required to immediately reimburse the Plaintiff [mother] for his share of the child's uncovered medical expenses."  To hold that mother cannot be granted relief because she titled her motion "Affidavit and Petition for Rule to Show Cause" – instead of "Affidavit and Petition for Rule to Show Cause and Motion to Enforce Divorce Decree" – "would be to put form over substance, which we refuse to do."  See Gologanoff v. Gologanoff, 6 Va. App. 340, 348, 369 S.E.2d 446, 450 (1988).  Because mother's affidavit and petition for rule to show cause presented the trial court with the issue of whether father was required to reimburse mother for half of B.G.'s uncovered medical expenses and because she requested the relief ultimately granted by the trial court (effectively requesting that she receive a judgment reimbursing her for that amount of money), we find no error in the trial court's award.

---

[3] Mother's affidavit and petition for rule to show caused asked for $7,654.24, but the circuit court declined to award $306.60, which mother had expended to stay at a Marriott hotel while B.G. was getting medical treatment at Johns Hopkins.

[4] Pursuant to Code § 20-109.1, "Where the court affirms, ratifies and incorporates by reference in its decree such [property settlement] agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree."  Because the divorce decree "ratified and approved and incorporated by reference," the terms of the agreement, those terms were enforceable in the same manner as the divorce decree.

Furthermore, by virtue of being incorporated into the divorce decree, father's obligation to pay half of the children's uncovered medical expenses had the effect of a judgment. See Code § 8.01-426 ("A decree for land or specific personal property, and a decree or order requiring the payment of money, shall have the effect of a judgment . . . ."). See also Kahn v. McNicholas, 67 Va. App. 215, 230-31, 795 S.E.2d 485, 492 (2017) (recognizing that child support obligations, spousal support obligations, and monetary awards arising in the context of divorce may be enforced through contempt or as money judgments). Mother's affidavit and petition for rule to show cause essentially asked the trial court to reduce the judgment created by the divorce decree into a judgment for a sum certain amount based on her affidavit and testimony presented at the hearing. We find no error in the trial court's decision to take this requested action despite its decision also not to find father in contempt. In short, the trial court effectively entered a judgment directing father to pay mother $7,347.64 as reimbursement for half of their son's uncovered medical expenses as required by the divorce decree.

This Court's decision in Zedan v. Westheim, 60 Va. App. 556, 729 S.E.2d 785 (2012) ("Westheim I"), is also persuasive in our decision. In that case, a mother filed a show cause motion against a father for failure to pay child support in accordance with a court order. Id. at 566, 729 S.E.2d at 790. The trial court found the father in contempt and ordered him to pay arrearages for the child support. Id. at 568, 729 S.E.2d at 791. On appeal, this Court reversed the finding of contempt because the father never received notice of the order, but remanded the case "to the trial court so that the court may, in its discretion, determine how the child support provisions of the decree of annulment should be enforced." Id. at 584, 729 S.E.2d at 799. On remand, the trial court released $221,610.30 (the amount that the trial court determined the father owed for child support arrearage, attorneys' fees, interest, and child support due for the anticipated length of the initial appeal) to mother from the father's appeal bond. The matter was

then appealed to this Court again, and we affirmed the trial court's award of the bond to mother. Zedan v. Westheim, 62 Va. App. 39, 50, 741 S.E.2d 792, 797 (2013) ("Westheim II").

Westheim I and Westheim II, therefore, support our conclusion that trial courts have the discretion to enforce decrees based on the filing of a show cause motion, even where no contempt is found. If such action were not permitted, this Court would not have remanded Westheim I following the first appeal instructing the judge to find another way to enforce the annulment decree, nor would it have affirmed the award of the appeal bond in Westheim II. See also Hughes v. Hughes, No. 2602-09-04, 2010 Va. App. LEXIS 361 (Va. Ct. App. Sept. 7, 2010) (reversing trial court's finding of contempt for lack of evidence of willfulness, but affirming trial court's award of a child support arrearage awarded pursuant to show cause motion).

For all of these reasons, we hold the trial court did not err.

B. The Trial Court's Interpretation of the Language of the Agreement Incorporated in the Divorce Decree

Father's first, third, fourth, and fifth assignments of error each address the trial court's alleged error in interpreting the divorce decree, which incorporated the terms of the parties' agreement, to mean that father is obligated to maintain health insurance for the children after they reached the age of majority and to pay for half of any uncovered medical expenses incurred while the insurance was in place. Therefore, we address these assignments of error together.

Appellate courts review *de novo* a trial court's interpretation of a contract incorporated into a divorce decree. See Plunkett v. Plunkett, 271 Va. 162, 166, 624 S.E.2d 39, 41 (2006). "Property settlement agreements entered into pursuant to a divorce proceeding are contracts; 'therefore, we must apply the same rules of interpretation applicable to contracts generally.'" Smith v. Smith, 15 Va. App. 371, 374, 423 S.E.2d 851, 853 (1992) (quoting Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)). A "contract is to be construed as a whole, and effect given to every provision thereof if possible." Ames v. Am. Nat'l Bank, 163 Va. 1, 38-39, 176 S.E. 204, 216-17

(1934). "[W]e are not to treat any word or clause in the PSA 'as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.'" Stacy v. Stacy, 53 Va. App. 38, 48, 669 S.E.2d 348, 352-53 (2008) (*en banc*) (quoting Dominion Sav. Bank, FSB v. Costello, 257 Va. 413, 417, 512 S.E.2d 564, 567 (1999)).

Father argues that the trial court and mother erroneously relied on the passage of the Affordable Care Act (ACA) "to determine the obligations of the parties entered into a decade earlier, thus violating the rule of law that the law in effect when a contract is made is as much a part of the contract as incorporated therein." However, we find that, regardless of changes in the law, the plain terms of the parties' agreement itself required father to provide insurance and to pay for half of the uncovered medical expenses of his children for as long as the policy permitted his children to be covered.

Section 15 of the parties' agreement provides:

> The Father agrees to maintain the minor children as a beneficiary of his present medical/hospitalization policy for so long as they may be entitled to said coverage. The parties agree to share equally the cost of any medical or dental expenses (including orthodontic) of the children not covered by said insurance.

In Section 15, the word "minor" describes the children being discussed by the agreement; it does not create a time limitation on the obligation to provide insurance coverage. As mother argues in her brief, if the words "minor children" limited the length of time the children would be entitled to coverage, then the end of that first sentence in Section 15 providing that the children should receive coverage "for so long as they may be entitled to said coverage" would be virtually meaningless. It is this latter portion of the sentence – not the word "minor" – that clearly creates the time limitation for coverage.

A reading of the agreement as a whole, as incorporated into the divorce decree, supports our conclusion. Section 14 of the agreement states:

> Each party agrees to maintain each present policy of life insurance on his and her life in their present face values, naming the *minor children* as beneficiaries *until each child has reached the age of 22 years*. Each party shall annually on the anniversary date of the policy on his and her lives exhibit evidence to the other that the policies are in full force and effect and that all premiums, dues and assessments have been paid. Each covenants not to take loans against their policies or otherwise diminish the face value of said policies for the beneficiaries.

(Emphasis added). The only logical reading of the term "minor" in Section 14 is as a description of the children because the agreement then specifically provides that the children are to continue to be beneficiaries until they reach the age of 22 – an age obviously outside the time of the children's minority. Thus, as in Section 15, Section 14 uses the word "minor" to describe the children while providing a different time period for the parties' obligations.

Similarly, Section 16 requires father and mother to make payments on behalf of their "minor children" during a period when the children are unlikely to be minors. Section 16 states:

> Each party agrees to contribute on behalf of their children one-half of the reasonable cost of a four-year college education for the *minor children*, to include tuition, room and board, books, transportation, supplies, and a reasonable allowance, said cost not to exceed the cost of a four-year college education at a state supported school such as the University of Virginia for in-state tuition. Each party shall retain their rights to claim, if eligible, the maximum tax credit for the Hope Scholarship credit and the Lifetime Learning credit.

(Emphasis added). This section requires the parties to pay half of a four-year college tuition and expenses for their "minor children." If we were to give the term "minor children" the same meaning father insists we give it in Section 15, then the parties would only be required to pay for four years of college if the children completed four years of college before turning 18. We find that the more logical reading of the word "minor" in this section and throughout the agreement is as a description of their children.

The parties also argue over the meaning of the word "entitled" in Section 15. "Words used by the parties are to be given their usual, ordinary and popular meaning, unless it can be clearly shown in some legitimate way that they were used in some other sense, and the burden of showing this is always upon the party alleging it." Ames, 163 Va. at 39, 176 S.E. at 217. "Entitle" is defined as "to give a right or legal title to; *to qualify (one) for something*: furnish with proper grounds for seeking or claiming something." Webster's Third New International Dictionary 758 (2002) (emphasis added). In the context of the parties' agreement, the most fitting, plain-language definition of the word "entitled" is "to qualify." At the time B.G. incurred the medical expenses at issue in this appeal, he was "entitled" to coverage under the policy because he qualified for coverage under the policy. To adopt a stricter definition of the word "entitled" in this context would potentially render the provision meaningless.[5]

Father also argues that the parties did not contemplate that the children would be covered by the insurance after they turned 18 because the law at the time did not require it. However, we find that the agreement specifically contemplated that the time period for which the children may be provided coverage was subject to change, and it was purposefully drafted to extend father's obligation to cover that shifting time frame. The agreement did not set a finite end date for the father's obligation. Instead, it states that father must provide the children coverage "for so long as

---

[5] For example, father argues that "entitled" means "a legal right to something." He claims the children were *entitled* to coverage before they turned 18, and after they turned 18, they were only *eligible* for coverage. Father claims that before the children turned 18 they had a legal right to the insurance because the trial court in the year 2000, when the agreement was signed, had the authority pursuant to the language of Code § 20-108.1 to order a parent to provide medical insurance for "dependent children," but no authority to order coverage after the children reached the age of 18. However, the trial court never ordered father to maintain coverage for the dependent children pursuant to that code section. Instead, the trial court incorporated the terms of the parties' agreement, which contemplated father providing insurance for as long as the policy would allow, into the divorce decree. Therefore, father has failed to show a distinction between the children's entitlement to the insurance before and after they reached the age of majority.

they *may* be entitled to said coverage." (Emphasis added). Use of the word "may" suggests that the parties anticipated that the amount of time for which the children would be entitled to coverage would be subject to change and that father's obligation to provide coverage was subject to those potential changes.

There is no dispute that, at the time B.G. incurred the medical expenses at issue in this case, B.G. was being provided health insurance coverage under father's policy.[6] Therefore, at the time the expenses were incurred, B.G. – although no longer a minor – was entitled to coverage pursuant to the agreement.

We next turn to the question of whether father was required to pay for half of the uncovered expenses incurred. The second sentence of Section 15 states, "The parties agree to share equally the cost of any medical or dental expenses (including orthodontic) of the children not covered by said insurance." The reference to "said insurance" refers to the insurance discussed in the prior sentence of Section 15 and limits the obligation of the parties to pay for uncovered expenses to the period of time when the children had insurance coverage, regardless of their age. Therefore, because B.G. had insurance coverage at the time the expenses at issue were incurred, father must reimburse mother for his half of the uncovered medical expenses. As a result, we find no error in the trial court's award of these expenses to mother.

## C. Appellate Attorney's Fees

Both father and mother requested appellate attorney's fees for this appeal. Section 25 of the parties' agreement provides, "In the event that either party defaults in the performance of any

---

[6] At the hearing on the affidavit and petition for rule to show cause, when discussing the medical expenses at issue, mother testified, "Kaiser was covering most of this. This is what Kaiser did not cover so- -." In his brief, father states that he "provided, voluntarily, health insurance after [B.G.] reached the age of eighteen years of age." Although mother disputes that father undertook this obligation voluntarily, the statement shows father agrees that B.G. continued to qualify for, and was covered by, the insurance.

of the provisions of this Agreement, the defaulting party will indemnify the other for all reasonable expenses and costs, including attorney's fees, incurred in successfully enforcing the terms of this Agreement." The provisions of the agreement, including this provision governing attorney's fees, were incorporated into the divorce decree. See Bousman v. Lhommedieu, No. 1109-12-4, 2013 Va. App. LEXIS 85, at *14 (Va. Ct. App. Mar. 19, 2013) (finding attorney's fees provision in parties' property settlement agreement was incorporated into parties' divorce decree). Because we find that the agreement requires father to pay for one-half of B.G.'s medical expenses, father has defaulted in the performance of the agreement. We therefore award mother reasonable appellate attorney's fees incurred in enforcing the provisions of the agreement on appeal, and we remand this matter to the trial court for a determination of the amount of that award.

### III. CONCLUSION

The trial court did not err in ordering the challenged reimbursement to mother despite its finding that father was not in contempt. The trial court found that father's interpretation of the agreement was not unreasonable, albeit incorrect, preventing the trial court from finding father in contempt. However, this finding did not prevent the trial court from enforcing the agreement, as incorporated by the divorce decree, and effectively issuing a judgment for father to reimburse mother.

The trial court also did not err in interpreting the final divorce decree, which incorporated the terms of the parties' agreement. Section 15 of the parties' agreement provides that father must continue to provide insurance coverage for the children as long as they qualify for coverage under his policy. It also provides that the parties must each pay half of the cost of the children's uncovered medical expenses while the children are covered by the policy. There is no dispute that B.G. was covered by father's policy at the time the expenses were incurred. Consequently, the

court did not err in awarding mother $7,347.64 for one-half of B.G.'s uncovered medical expenses. Finally, based on Section 25 of the agreement, we find that we must award reasonable appellate attorney's fees to mother as she has prevailed on appeal in this Court's decision to affirm the circuit court's award.

Therefore, for all of these reasons, we affirm the decision of the circuit court, and remand the matter solely for the determination of the amount of reasonable appellate attorney's fees to be awarded to mother as dictated by the parties' agreement.

<u>Affirmed and remanded.</u>